IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GERALD LYNN BOSTOCK,

      Plaintiff,

  v.

CLAYTON COUNTY,

      Defendant.

CIVIL ACTION FILE NO.

1:16-CV-001460-ODE-WEJ

## FINAL REPORT AND RECOMMENDATION

Plaintiff, Gerald Lynn Bostock, brought this action against his former employer, Clayton County, Georgia (the "County"), for alleged violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (See Second Am. Compl. [10], Count I.)  The County filed a Motion to Dismiss the Second Amended Complaint [13] pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that it fails to state a claim upon which relief may be granted. As discussed below, the undersigned agrees and **RECOMMENDS** that defendant's Motion be **GRANTED**.

## I.   <u>GOVERNING STANDARD</u>

When considering a motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (internal citations omitted); <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Id.</u>  The Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Twombly</u>, 550 U.S. at 561 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise a right to relief above the speculative level." <u>Id.</u> at 555.  The plausibility standard "does not [however,] impose a probability requirement at the pleading stage; it

simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id. at 556.

## II.     PLAINTIFF'S ALLEGATIONS

Mr. Bostock is a gay male. (Sec. Am. Compl. ¶ 12). He began working for defendant on or about January 13, 2003. (Id. ¶ 11.) The County employed plaintiff as the Child Welfare Services Coordinator assigned to the Juvenile Court of Clayton County; he was charged with primary responsibility for the Clayton County Court Appointed Special Advocate ("CASA"). (Id. ¶ 13.) During the over ten years that Mr. Bostock worked for the County, he received good performance evaluations and the program he managed received accolades. (Id. ¶ 14.) For example, in 2007 Georgia CASA awarded Clayton County CASA its Established Program Award of Excellence. (Id.) National CASA also recognized Mr. Bostock for program expansion, and he served on its Standards and Policy Committee in or about 2011-12. (Id.)

Beginning in January 2013, Mr. Bostock became involved with a gay recreational softball league called the Hotlanta Softball League. (Sec. Am. Compl. ¶ 15.) Mr. Bostock actively promoted Clayton County CASA to softball league members as a source for volunteer opportunities. (Id. ¶ 16.) In the months after plaintiff joined the Hotlanta Softball League, he alleges "on information and belief" that his participation in the league and his sexual orientation and identity

were openly criticized by one or more persons who had significant influence on defendant's decision making.  (Id. ¶ 17.)

In or around April 2013, defendant advised Mr. Bostock that it was conducting an internal audit on CASA program funds he managed.  (Sec. Am. Compl. ¶ 18.)  Mr. Bostock contends that he did not engage in any improper conduct with regard to program funds under his custody or control, and alleges that defendant initiated the audit as a pretext for discrimination based on his sexual orientation and failure to conform to a gender stereotype.  (Id. ¶¶ 19-20.) Plaintiff further alleges "on information and belief" that in May 2013, during a meeting with the Friends of Clayton County CASA Advisory Board, where his supervisor was present, at least one individual made disparaging comments about Mr. Bostock's sexual orientation and identity and participation in the softball league.  (Id. ¶ 21.)

On or about June 3, 2013, defendant terminated Mr. Bostock's employment. (Sec. Am. Compl. ¶ 22.)  The stated reason for termination was conduct unbecoming of a County employee.  (Id. ¶ 23.)  Plaintiff alleges that this purported reason was a pretext for discrimination against him based on his sex and/or sexual orientation.  (Id.)

Mr. Bostock filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 5, 2013.  (See Ex. A to Pl.'s

Resp. in Opp'n to Def.'s Mot. to Dismiss [14-1] ("Pl.'s Resp. Br.").)  As reflected on the Charge, Mr. Bostock checked the box for sex discrimination and stated in part as follows: "I believe that I have been discriminated against because of my sex (male/sexual orientation)."  (Id.)

On May 5, 2016, Mr. Bostock filed his initial Complaint [1] pro se.  This pleading alleged only discrimination on the basis of sexual orientation.  After Mr. Bostock secured counsel, he filed his First Amended Complaint [4] on August 2, 2016.  This pleading also alleged only discrimination on the basis of sexual orientation.  Plaintiff filed his Second Amended Complaint [10] on September 12, 2016, which has been summarized above.

## III.   ANALYSIS

Defendant argues that the Second Amended Complaint should be dismissed because Title VII does not encompass claims of sexual orientation discrimination.  Defendant also contends that, while gender stereotyping claims are cognizable under Title VII, because the Second Amended Complaint is devoid of any factual support for such a claim, this claim fails as well.  Finally, defendant asserts that, even if plaintiff had properly pled a gender stereotyping claim, it should be dismissed for failure to exhaust administrative remedies.  (See Def.'s Mem. [13] 4-12.)  The Court incorporates plaintiff's arguments in response (see Pl.'s Resp. Br. [14] 5-15) as necessary, infra.

### A.    A Sexual Orientation Discrimination Claim May Not Be Brought Under Title VII

Title VII prohibits discrimination against any individual because of such individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As the Fifth Circuit explained a few years after Title VII's enactment:

> [T]here is little legislative history to guide our interpretation.  The amendment adding the word 'sex' to 'race, color, religion and national origin' was adopted one day before House passage of the Civil Rights Act.  It was added on the floor and engendered little relevant debate.  In attempting to read Congress' intent in these circumstances, however, it is reasonable to assume, from a reading of the statute itself, that one of Congress' main goals was to provide equal access to the job market for both men and women.

Diaz v. Pan Am. World Airways, Inc., 442 F.2d 385, 386 (5th Cir. 1971).[1]

Four years after Diaz in Willingham v. Macon Telegraph Publishing Co., 507 F.2d 1084 (5th Cir. 1975) (en banc), the Fifth Circuit again noted the meager legislative history related to the addition of "sex" to Title VII and stated as follows:

> We find the legislative history inconclusive at best and draw but one conclusion, and that by way of negative inference.  Without more extensive consideration, Congress in all probability did not intend for its proscription of sexual discrimination to have significant and sweeping implications.  We should not therefore extend the coverage of the Act to situations of questionable application without some stronger Congressional mandate.

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

> We perceive the intent of Congress to have been the guarantee of equal job opportunity for males and females.  Providing such opportunity is where the emphasis rightly lies.

Id. at 1090-91.

Also in 1975, the EEOC issued a decision which noted the absence of a definition of the word "sex" in Title VII and the "scant" evidence of what Congress intended in the statute's legislative history, but which stated that "the congressional debates relative to the prohibition against employment discrimination based on sex which preceded the enactment of Title VII focused almost exclusively on disparaties [sic] in employment opportunities between males and females."  EEOC Dec. No. 76-75 (Dec. 4, 1975), 1975 WL 342769, at *2.  The EEOC then cited, inter alia, the Fifth Circuit's Willingham decision as support for the statement "that when Congress used the word 'sex' in Title VII it was referring to a person's gender."  Id.  The EEOC then concluded as follows::

> Charging Party alleges unlawful employment discrimination based on his homosexuality, a condition which relates to a person's sexual proclivities or practices, not his or her gender; these two concepts are in no way synonymous.  There being no support in either the language or the legislative history of the statute for the proposition that in enacting Title VII Congress intended to include a person's sexual practices within the meaning of the term sex, and since the evidence in this case, viewed as a whole, indicates that Respondent Employer failed to rehire Charging Party at least in part because of his sexual practices, not his gender, the Commission must conclude that it lacks jurisdiction over the subject matter alleged by Charging Party as the basis for Respondent Employer's failure to rehire him.

7

Id.[2]

Four years later in <u>Blum v. Gulf Oil Corp.</u>, 597 F.2d 936 (5th Cir. 1979)
(per curiam), in a case brought by an employee who claimed that he was
terminated because of his sexual preference, the Fifth Circuit stated, "Discharge
for homosexuality is not prohibited by Title VII."   <u>Id.</u> at 938; <u>see also</u> <u>Davis v.</u>
<u>Signius Inv. Corp./Answernet</u>, No. 1:12-CV-04143-TWT, 2013 WL 1339758, at
*5 (N.D. Ga. Feb. 26, 2013) ("Title VII does not protect employees from
discrimination based on sexual orientation."), <u>R. & R. adopted</u>, No. 1:12-CV-
4143-TWT, 2013 WL 1339751 (N.D. Ga. Mar. 29, 2013).

Every Circuit Court of Appeal which has considered the issue agrees with
<u>Blum</u> that Title VII does not extend to sexual orientation discrimination.   <u>See</u>
<u>Vickers v. Fairfield Med. Ctr.</u>, 453 F.3d 757, 764-65 (6th Cir. 2006); <u>Medina v.</u>
<u>Income Support Div.</u>, 413 F.3d 1131, 1135 (10th Cir. 2005); <u>Dawson v. Bumble</u>
<u>& Bumble</u>, 398 F.3d 211, 217 (2d Cir. 2005); <u>Schroeder v. Hamilton Sch. Dist.</u>,
282 F.3d 946, 951 (7th Cir. 2002); <u>Bibby v. Phila. Coca Cola Bottling Co.</u>, 260
F.3d 257, 261 (3d Cir. 2001); <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194
F.3d 252, 259 (1st Cir. 1999); <u>Wrightson v. Pizza Hut of Am., Inc.</u>, 99 F.3d 138,
143 (4th Cir. 1996); <u>Williamson v. A.G. Edwards & Sons, Inc.</u>, 876 F.2d 69, 70

---

[2] As discussed <u>infra</u>, the EEOC changed its position in 2015.

(8th Cir. 1989) (per curiam); <u>DeSantis v. Pac. Tel. & Tel. Co., Inc.</u>, 608 F.2d 327, 329-30 (9th Cir. 1979).[3]

Plaintiff asserts that the "question of whether sexual orientation discrimination claims are cognizable under Title VII is 'an open one'" in the Eleventh Circuit.  (<u>See</u> Pl.'s Resp. Br. 6, quoting <u>Issacs v. Felder Servs., LLC</u>, 143 F. Supp. 3d 1190, 1193 (M.D. Ala. 2015).)  Plaintiff accurately quotes <u>Issacs</u>.  However, the former Fifth Circuit decision in <u>Blum</u> is binding authority in the Eleventh Circuit.  <u>See</u> <u>Bonner</u>, 661 F.2d at 1209 (adopting as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981).  Given the <u>Blum</u> precedent, the statement that plaintiff quotes from the district court's order in <u>Issacs</u> is clearly wrong.  The question is not open in the Eleventh Circuit.[4]

---

[3] <u>DeSantis</u> was abrogated on other grounds by <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864, 874-75 (9th Cir. 2001).  However, that portion of <u>DeSantis</u> holding that "Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality[,]" remains undisturbed.  <u>See DeSantis</u>, 608 F.2d at 329-30 (footnotes omitted).

[4] Even without <u>Blum</u>, one could argue that the Eleventh Circuit is squarely in line with the weight of authority against application of Title VII to sexual orientation discrimination claims.  <u>See Fredette v. BVP Mgmt. Assocs.</u>, 112 F.3d 1503, 1510 (11th Cir. 1997) ("We do not hold that discrimination because of sexual orientation is actionable.").

In apparent response to the fact that the Circuit Courts have uniformly held that Title VII's prohibition against sex discrimination does not extend to sexual orientation discrimination, supporters of an extension have fought unsuccessfully in Congress to amend Title VII since the mid-1970s.  See Ulane v. E. Airlines, Inc., 742 F.2d 1081, 1085 & n.11 (7th Cir. 1984) (citing HR. 166, 94th Cong., 1st Sess. (1975), which sought to add the phrase "affectional or sexual preference" to Title VII).  1994 saw introduction of The Employment Non-Discrimination Act ("ENDA"), which would prohibit discrimination in hiring and employment on the basis of sexual orientation or gender identity.  (See ENDA of 1994, H.R. 4636, 103d Cong. (1994).)  The ENDA has been before Congress during almost every session since 1994, but it has failed to pass.  (See https://www.washingtonpost.com/news/the-fix/wp/2013/11/04/what-is-the-employment-non-discrimination-act-enda) (last visited Nov. 3, 2016.)  The most recent proposal to amend Title VII to prohibit discrimination on the basis of, inter alia, sexual orientation and gender identity, is the Equality Act of 2015.  See Equality Act of 2015, S. 1858, 114th Cong. (2015).  It too has failed to pass.

As defendant points out, such proposed amendments would be "superfluous if sexual orientation was already covered by Title VII."  (Def.'s Reply Br. [15] 4.)  "Although congressional inaction subsequent to the enactment of a statute is not always a helpful guide, Congress's refusal to expand the reach

of Title VII is strong evidence of congressional intent in the face of consistent judicial decisions refusing to interpret 'sex' to include sexual orientation." Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000).

Although the judicial branch has rejected calls to interpret Title VII broadly to encompass sexual orientation discrimination claims and the legislative branch has not amended Title VII to include such claims, the executive branch recently reversed the position it first took in 1975. In Baldwin v. Foxx, EEOC Appeal No. 0120133080, 2015 WL 4397641 (July 15, 2015), the EEOC held that a claim of discrimination on the basis of sexual orientation necessarily states a claim of discrimination on the basis of sex under Title VII. Id. at *5. Plaintiff asks this Court to follow the EEOC's Baldwin decision. (Pl.'s Resp. Br. 9.) He argues that the EEOC's interpretation of Title VII, although not binding, is entitled to respect to the extent that it is persuasive. (Id. at 9 n.2, citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

EEOC interpretations of Title VII are entitled to Skidmore "deference to the extent [that they have] the power to persuade." Vill. of Freeport v. Barrella, 814 F.3d 594, 607 n.47 (2d Cir. 2016) (internal quotation marks and citation omitted). As held in Skidmore, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all

those factors which give it power to persuade, if lacking power to control." Skidmore, 323 U.S. at 140.

The Court makes no judgment about the thoroughness evident in Foxx's consideration or the validity of its reasoning, but notes its inconsistency with the EEOC's earlier pronouncement (discussed supra in the text preceding note 1). Several federal district courts have considered whether to defer to the EEOC's interpretation.  See, e.g., Hinton v. Va. Union Univ., No. 3:15CV569, 2016 WL 2621967, at *5 (E.D. Va. May 5, 2016); Christiansen v. Omnicom Grp., Inc., 167 F. Supp. 3d 598 (S.D.N.Y. 2016); Videckis v. Pepperdine Univ., 150 F. Supp. 3d 1151 (C.D. Cal. 2015); Isaacs, 143 F. Supp. 3d at 1190; Roberts v. United Parcel Serv., Inc., 115 F. Supp. 3d 344 (E.D.N.Y. 2015); Burrows v. Coll. of Cent. Fla., No. 5:14-CV-197-OC-30PRL, 2015 WL 5257135 (M.D. Fla. Sept. 9, 2015).

These district courts have split on whether to defer to the EEOC's decision or follow precedent in their own Circuits.  For example, Hinton and Christiansen ruled that the EEOC's decision could not displace contrary holdings of their regional Circuit Courts of Appeal, while Burrows ruled that the EEOC's decision could not displace contrary holdings of other district courts in its Circuit.[5]  See Hinton, 2016 WL 2621967, at *5; Christiansen, 167 F. Supp. 3d at 620-21;

---

[5] Burrows surprisingly failed to cite controlling precedent in Blum.

12

Burrows, 2015 WL 5257135, at *2.  Isaacs and Videckis deferred to the EEOC's position without addressing binding precedent in their regional Circuits.  See Isaacs, 143 F. Supp. 3d at 1193;[6] Videckis, 150 F. Supp. 3d at 1159-60.  Finally, Roberts recognized binding Second Circuit precedent but chose to disregard it in deferring to the EEOC's decision.  Roberts, 115 F. Supp. 3d at 362.

The undersigned agrees with Hinton that the reasons offered in those decisions which deferred to the EEOC's position are matters that lie within the purview of the legislative branch, not the judicial branch.  Title VII is a creation of Congress and, if Congress is so inclined, it can amend the statute to provide a claim for sexual orientation discrimination.  It is not the province of unelected jurists to effect such an amendment.  Hinton, 2016 WL 2621967, at *5.

This Court thus will not defer to the EEOC's decision but will follow the former Fifth Circuit decision in Blum, which is binding precedent binding in the Eleventh Circuit.  Therefore, the undersigned **RECOMMENDS** that plaintiff's sexual orientation discrimination claim be **DISMISSED WITH PREJUDICE**.

------

[6] As discussed in the text preceding note 3, Issacs erroneously concluded that the issue of whether a plaintiff could state a claim for sexual orientation discrimination in the Eleventh Circuit was an open one.

### B.    <u>Plaintiff Has Failed to State a Gender Stereotyping Claim</u>

"Title VII bar[s] not just discrimination because of biological sex, but also gender stereotyping—failing to act and appear according to expectations defined by gender." <u>Glenn v. Brumby</u>, 663 F.3d 1312, 1316 (11th Cir. 2011) (citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250-51 (1989)); <u>see also</u> <u>Anderson v. Napolitano</u>, No. 09-60744-CIV, 2010 WL 431898, at *4 (S.D. Fla. Feb. 8, 2010) ("[A] plaintiff can state a Title VII claim for sex or gender stereotyping—a type of sex discrimination based on a person's failure to comply with gender stereotypes.").

To state such a claim, a plaintiff must allege that he suffered discrimination based on his employer's belief that he failed "to conform to masculine stereotypes." <u>E.E.O.C. v. Family Dollar Stores, Inc.</u>, No. 1:06-CV-2569-TWT, 2008 WL 4098723, at *14 (N.D. Ga. Aug. 28, 2008) (adopting R. & R.); <u>see also</u> <u>Higgins</u>, 194 F.3d at 261 n.4 (noting that a man can support a Title VII claim "on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity").

"The gender stereotype associated with being a man is masculinity." <u>Mowery v. Escambia Cty. Utilities Auth.</u>, No. 3:04CV382-RS-EMT, 2006 WL 327965, at *7 (N.D. Fla. Feb. 10, 2006). Therefore, in order to state a sex-stereotyping claim, a plaintiff is required to "show discrimination based on

gender non-conforming 'behavior observed at work or affecting his job performance,' such as his 'appearance or mannerisms on the job.'" Gilbert v. Country Music Ass'n, Inc., 432 F. App'x 516, 519 (6th Cir. 2011) (quoting Vickers, 453 F.3d at 763); see also E.E.O.C. v. McPherson Cos., 914 F. Supp. 2d 1234, 1244 (N.D. Ala. 2012) ("In the few cases in which actionable harassment based on a male's nonconformity to gender stereotype has been found, the undisputed evidence unequivocally established that the male 'harassers' perceived the employee to show feminine characteristics.").

The County contends that any gender stereotyping claim must be dismissed because the Second Amended Complaint is devoid of any factual support for such a claim, aside from its single conclusory assertion that "Defendant initiated the audit as a pretext for discrimination against Plaintiff based on his sexual orientation and failure to conform to a gender stereotype." (Sec. Am. Compl. ¶ 20.)  Plaintiff responds that Rule 8 of the Federal Rules of Civil Procedure does not require that he plead a prima facie case of discrimination in order to survive a motion to dismiss, and that all he must do is provide fair notice of his claim. (Pl.'s Resp. Br. 12.)  Mr. Bostock asserts that the Second Amended Complaint meets that standard because it details his position with the County, his participation in the softball league, and the ensuring criticism and discriminatory

15

treatment he allegedly received because of his sexual orientation and identity.  (Id. at 12-13.)

A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002).  Nevertheless, complaints alleging discrimination still must meet the plausibility standard of Twombly and Iqbal.  See Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that to state a hostile work environment claim post-Iqbal, recitals of the cause of action do not suffice and that employee "was required to allege" five prima facie elements, including that he was harassed because of his race).

As discussed supra, in order to state a gender stereotyping claim, Mr. Bostock was required to allege facts showing that he was discriminated against based on gender non-conforming behavior observed at work or affecting his job performance, such as his appearance or mannerisms on the job.  See Gilbert, 432 F. App'x at 519.  However, the Second Amended Complaint contains no allegations that plaintiff suffered discrimination based on his employer's belief that he failed to conform to masculine stereotypes.  See Family Dollar Stores, 2008 WL 4098723, at *14.  Like the plaintiff in Mowery, Mr. Bostock "does not allege, nor can an inference be properly drawn, that [he] was perceived by [his

16

supervisor] and his co-workers as being feminine rather than masculine." Mowery, 2006 WL 327965, at *7.  Therefore, the undersigned reports that plaintiff has failed to allege a plausible gender stereotyping claim under Iqbal and Twombly.

The Court agrees with defendant that plaintiff is attempting to avoid dismissal of this case by bootstrapping a conclusory gender stereotyping allegation to his sexual orientation discrimination claim.  The court in Bostick v. CBOCS, Inc., No. 8:13-CV-1319-T-30TGW, 2014 WL 3809169 (M.D. Fla. Aug. 1, 2014), explained why that cannot be allowed:

> In sum, the record is clear that Bostick is not bringing a case based on having been harassed and retaliated against because others perceived him to be homosexual and therefore not adequately masculine.  Instead, he alleges he is a gay man who was discriminated and retaliated against based on sexual stereotyping. Bostick's response seems to imply that all gay men fail to comply with male stereotypes simply because they are gay.  However, that would mean that every case of sexual orientation discrimination [would] translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make sexual orientation discrimination cognizable under Title VII.

Id. at *6 (internal quotations and citations omitted; bracket in original).

The question arises whether plaintiff could amend the Complaint yet again to add facts alleging that Clayton County took adverse action against him because his supervisor or co-workers perceived him to be feminine.  "Although plaintiff is represented by counsel and defendant's motion to dismiss has been pending . . .,

[]he has not filed a motion or otherwise requested an opportunity to amend h[is] complaint." Wells v. W. Ga. Tech. Coll., No. 1:11-CV-3422-JEC, 2012 WL 3150819, at *4 (N.D. Ga. Aug. 2, 2012). Instead of amending his claims to address the problems identified in defendant's Motion to Dismiss, plaintiff filed a Response Brief. In other words, plaintiff stands by the Second Amended Complaint as drafted. Therefore, the undersigned will not sua sponte recommend that plaintiff be granted leave to amend to salvage a gender stereotyping claim that is deficient under Twombly and Iqbal. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

Accordingly, the undersigned **RECOMMENDS** that plaintiff's gender stereotyping claim be **DISMISSED WITH PREJUDICE**, because the Second Amended Complaint contains no factual allegations supportive of such any such claim. See Vickers, 453 F.3d at 764 (holding that the plaintiff's claim failed "because [he] has failed to allege that he did not conform to traditional gender stereotypes in any observable way at work").

**C.**   **Plaintiff Failed to Exhaust Administrative Remedies With Regard To Any Gender Stereotyping Claim**[7]

A potential claimant who intends to sue for discrimination must first file an administrative charge with the EEOC.  See Bost v. Fed. Express Corp., 372 F.3d 1233, 1239 (11th Cir. 2004).  "The filing of a charge of discrimination with the EEOC initiates 'an integrated, multi-step enforcement procedure' that enables the EEOC to detect and remedy various discriminatory employment practices."  Id. at 1238 (quoting EEOC v. Shell Oil Co., 466 U.S. 54, 62 (1984)).  This multi-step process includes "(1) prompt notice from the EEOC to the employer that a charge has been filed; and (2) investigation of the charge by the EEOC."  Id. at 1239. The purpose of requiring litigants to first exhaust these administrative remedies is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.  Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam).  As a result, a plaintiff's judicial complaint is limited by the allegations of his charge of discrimination or

---

[7] Given the other recommendations, the Court does not address defendant's alternative argument that plaintiff's gender stereotyping claim, which first appeared in the Second Amended Complaint, is time barred because he failed to file that pleading within 90 days of receipt of his notice of right to sue, and that claim does not relate back to the filing of the initial Complaint.  (Def.'s Mem. [13] 12-14.)

by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280 (internal quotation marks and citation omitted); see also Green v. Elixir Indus., Inc., 407 F.3d 1163, 1168 (11th Cir. 2005) ("The proper inquiry, as these cases make clear, is whether the complaint is 'like or related to, or grew out of' the allegations in the EEOC charge."). Although courts allow claims in litigation that "amplify, clarify, or more clearly focus" allegations in the EEOC charge, Gregory, 355 F.3d at 1279-80, claims of discrimination not alleged in a charge are not permitted. Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989).

Mr. Bostock's EEOC charge alleges only sexual orientation discrimination, not gender stereotyping. One would not reasonably expect an EEOC investigation of gender stereotyping to grow out of the charge's allegation of sexual orientation discrimination. See Norris v. Diakin Drivetrain Components, 46 F. App'x 344, 346 (6th Cir. 2002) (claim for same-sex sexual harassment cannot be reasonably expected to grow out of EEOC charge asserting discrimination based on sexual orientation); Lankford v. BorgWarner Diversified Transmission Prods., Inc., No. 1:02CV1876-SEB-VSS, 2004 WL 540983, at *3 (S.D. Ind. Mar. 12, 2004) ("A claim of discrimination based on sex is not reasonably related to, nor may it be expected to grow out of, a charge of discrimination based on sexual orientation."). As a result, plaintiff failed to

exhaust administrative remedies as to any alleged gender stereotyping claim. Accordingly, even if the Second Amended Complaint states a gender stereotyping claim, it should be dismissed for lack of exhaustion.

**IV.** **CONCLUSION**

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [13] be **GRANTED**, and that the Second Amended Complaint be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED**, this 3rd day of November, 2016.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

21