**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GERALD LYNN BOSTOCK, | ) | |
| | ) | |
|      Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. 1:16-CV-01460-ODE-WEJ |
| v. | ) | |
| | ) | |
| CLAYTON COUNTY, | ) | |
| | ) | |
|      Defendant. | ) | |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and LR 72.1.B, NDGa, Plaintiff Gerald Bostock files these Objections to the Magistrate Judge's Final Report and Recommendation [Doc. 16].

## I.  INTRODUCTION

The Magistrate Judge erroneously ignored established legal principles and Supreme Court precedent in recommending the dismissal of Mr. Bostock's claims of sexual orientation discrimination and gender stereotype discrimination.  With respect to the sexual orientation discrimination claim, this type of discrimination is actionable under Title VII of the Civil Rights Act of 1964 ("Title VII).  As to the gender stereotyping claim, Mr. Bostock has alleged sufficient factual allegations concerning discriminatory treatment on the basis of gender non-conformity.

Finally, as to the exhaustion issue, Mr. Bostock properly exhausted all available remedies at the EEOC by filing a charge for sex discrimination, which encompasses all the claims asserted in this lawsuit.  As set forth in greater detail below, Mr. Bostock requests that the Court reject the Report and Recommendation and deny Defendant's Motion to Dismiss.

## II. PROCEDURAL HISTORY

On May 5, 2016, Mr. Bostock filed his initial Complaint, *pro se*.  [Doc. 1.] After Mr. Bostock secured counsel, he filed his First Amended Complaint on August 2, 2016 and his Second Amended Complaint on September 12, 2016. [Docs. 4, 10.]

On September 26, 2016, Defendant filed a Motion to Dismiss the Second Amended Complaint.  [Doc. 13.]  On November 3, 2016, the Magistrate Judge issued his Final Report and Recommendation, recommending that Plaintiff's complaint be dismissed with prejudice.  [Doc. 16.]  Mr. Bostock objects to the Magistrate Judge's erroneous legal determinations in their entirety, and seeks to proceed with discovery and preparation for trial of his claims.

## III.   OBJECTIONS TO SPECIFIC RULINGS

Mr. Bostock objects specifically to the erroneous rulings of the Magistrate Judge that:

(1)  A sexual orientation claim may not be brought under Title VII;

(2)  Plaintiff failed to state a gender stereotyping claim;

(3)  Plaintiff failed to exhaust administrative remedies with regard to his gender stereotyping claim.

For the reasons set forth below, Mr. Bostock respectfully contends that the Magistrate Judge's rulings on these three issues were erroneous.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Standard of Review

Under Fed. R. Civ. P. 72 and 28 U.S.C. § 636, this Court reviews the recommended order of a Magistrate Judge to determine if it is either "clearly erroneous" or "contrary to law."  Normally, factual determinations fall under the deferential "clearly erroneous" standard, while legal issues and dispositive matters fall under the "contrary to law" standard, which mandates *de novo* review.  Mixed questions of fact and law are reviewed *de novo*.  Wright, Miller & Marcus, Fed. Prac. & Proc. § 3070.2 (2008) (collecting and discussing numerous authorities).

B.     The Magistrate Judge Erred in Determining that Sexual Orientation
       Discrimination Claims are not Cognizable Under Title VII

The Magistrate Judge determined that sexual orientation discrimination

claims are not cognizable under Title VII. For the reasons set forth below, Mr.

Bostock respectfully contends that the Magistrate Judge erred on this issue.

1.     *The Fifth Circuit's Decision in Blum v. Gulf Oil Corp is not
       Dispositive*

The Magistrate Judge relied in part upon *Blum v. Gulf Oil Corp.,* 597 F.2d

936 (5th Cir. 1979), for the proposition that sexual orientation claims are not

cognizable under Title VII.  Mr. Bostock does not dispute that the Fifth Circuit in

*Blum* stated that "[d]ischarge for homosexuality is not prohibited by Title VII[,]"

597 F.2d at 938, but in *Blum*, the primary issue on appeal was whether the

defendant articulated a legitimate non-discriminatory reason for the plaintiff's

discharge.  The Fifth Circuit held that it did.  596 F.2d at 937.  After reaching this

decision, which effectively resolved the appeal, the Fifth Circuit went on, however,

to "comment briefly" on other issues raised on appeal.  It was in this section of the

opinion in which the Fifth Circuit made its statement regarding discharge for

homosexuality.[1]  In support of this proposition, the Fifth Circuit did not recite any

---

[1] *See* Black's Law Dictionary (9th ed.2009) (defining "obiter dictum" as "[a]
judicial comment made while delivering a judicial opinion, but one that is

4

analysis and simply cited to its prior holding in *Smith v. Liberty Ins. Co.*, 569 F.2d

325 (5th Cir. 1978).

*Smith*, however, did not specifically address the issue of whether sexual

orientation claims are cognizable under Title VII.  Rather, in *Smith* the court

considered whether discrimination on the basis of gender stereotyping (the plaintiff

was not hired because the defendant considered him "effeminate") was a viable

claim under Title VII.[2]  The Fifth Circuit held that it was not. 569 F.2d at 327.  But

*Smith* is no longer good law on this point since its holding "has clearly been

abrogated by subsequent Supreme Court cases."  *See Winstead v. Lafayette County*

*Board of County Commissioners*, No. 1:16CV00054-MW-GRJ, 2016 WL

3440601, at *6, n.4 (N.D. Fla. June 20, 2016); *see also Price Waterhouse v.*

*Hopkins*, 490 U.S. 228 (1989).  The *Winstead* court also noted that "[o]f course the

EEOC has changed course" also on this issue.  *Id.*  In sum, "[e]very pillar

supporting the reasoning of the *Smith* court has been knocked down."  *Id.* Thus,

"*Smith* is one of many examples of a parsimonious reading of Title VII failing to

stand the test of time."  *Id.*  Because the entire basis on which *Blum* based its

---

unnecessary to the decision in the case and therefore not precedential (although it
may be considered persuasive)").

[2] *Smith* noted in a footnote that "[t]he EEOC itself has ruled that adverse action
against homosexuals is not cognizable under Title VII", 569 F.2d at 327 n.1,
(which is no longer the case).

statement regarding sexual orientation discrimination has been abrogated, Mr.

Bostock respectfully contends that *Blum* is not controlling on this issue.

> 2. *The Eleventh Circuit's Decision in Fredette v. BVP Mgmt.*
> *Assocs did not Decide the Issue of Sexual Orientation*
> *Discrimination Claims Under Title VII*

The Magistrate Judge also stated that, even without *Blum*, "one could argue

that the Eleventh Circuit is squarely in line with the weight of authority against

application of Title VII to sexual orientation discrimination claims" [Doc. 16. n.4]

and cited *Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503, 1510 (11th Cir. 1997).

The Magistrate Judge "could argue" this, and essentially did in his Final Report

and Recommendation, but this is not the law.  *Fredette* deliberately left the issue of

sexual orientation discrimination entirely open and is not indicative one way or the

other of how the Eleventh Circuit would determine this issue.

*Fredette* held that "when a homosexual male supervisor solicits sexual

favors from a male subordinate ... the male subordinate can state a viable Title VII

claim for gender discrimination." 112 F.3d at 1510. The Eleventh Circuit

specifically emphasized the "narrowness" of its holding and stated that "[w]e do

not hold that discrimination because of sexual orientation is actionable."  *Id.*  It

thus did not hold that sexual orientation discrimination claims were not actionable

as sex discrimination, it simply did not determine the issue one way or the other.

6

Although various district courts have interpreted *Fredette* differently, the interpretation that *Fredette* left the issue open is most consistent with the Eleventh Circuit's pronouncement regarding the "narrowness" of its holding.  Compare *Winstead,* 2016 WL 3440601, at *5 ("this Court's interpretation—that *Fredette* left the issue open—is hardly unique"); *Mowery v. Escambia Cty. Utils. Auth.*, No. 3:04cv382, 2006 WL 327965, at *8 (N.D. Fla. Feb. 10, 2006) (characterizing *Fredette* as not "holding that discrimination because of sexual orientation is not actionable"); *Rodriguez v. Alpha Inst. of S. Fla., Inc.*, No. 10–80714–CIV, 2011 WL 5103950, at *5 (S.D. Fla. Oct. 27, 2011) (same), with *Stevens v. Ala. Dep't of Corr.*, No. 1:12cv3782, 2015 WL 1245355, at *7 (N.D.Ala. Mar. 18, 2015) (suggesting that *Fredette* foreclosed claims of sexual orientation discrimination under Title VII); *Fitzpatrick v. Winn–Dixie Montgomery, Inc.*, 153 F.Supp.2d 1303, 1306 (M.D. Ala.2001) (citing *Fredette* for the proposition that "[s]exual orientation is not a protected class under Title VII.")

        3.    *Congress' Failure to Amend Title VII does not Provide a Basis to Find Sexual Orientation Discrimination Claims are not Cognizable*

The Magistrate Judge also relied on the fact that "supporters of an extension have fought unsuccessfully in Congress to amend Title VII since the mid-1970s." [Doc. 16, p. 10.]  The Supreme Court, however, has warned against relying on

7

Congressional inaction as an interpretative tool.  "[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress.  It is a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns, as it does here, a proposal that does not become law.'"  *Pension Ben Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal citations and quotation marks omitted); accord *Zuber v. Allen*, 396 U.S. 168, 185 n.21 (1969) ("'It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.'") (quoting *Girouard v. United States*, 328 U.S. 61, 69 (1946)); *United States v. Price*, 361 U.S. 304, 310-311 (1960) ("nonaction by Congress affords the most dubious foundation for drawing positive inferences."). "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *Pension Ben Guar. Corp.*, 496 U.S. at 650 (internal quotations omitted).  Moreover, "Congressional inaction frequently betokens unawareness, preoccupation, or paralysis." *Zuber*, 396 U.S. at 185 n.21; *see also id.* ("Even less deference is due silence in the wake of unsuccessful attempts to eliminate an offending interpretation by amendment.")

There is no need to amend Title VII to prohibit sexual orientation

discrimination.  Title VII already makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."  42 U.S.C. § 2000e-2(a)(1).  Supreme Court precedent makes plain that Title VII's prohibition against discrimination because of sex has become a robust source of protection for men and women workers alike without regard for hyper-technical distinctions.  In *City of L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) the Court stated: "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the *entire spectrum* of disparate treatment of men and women resulting from sex stereotypes" (emphasis added).  *See also Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 681 (1983) ("Proponents of the legislation stressed throughout the debates that Congress had always intended to protect all individuals from sex discrimination in employment.")

In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), a case addressing same-sex sexual harassment, the Court again reiterated this expansive interpretation of Title VII.  The Court stated that "male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with

when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils. . . ." *Id.* at 80. In rejecting the argument in *Oncale* that some mistreatment "because of . . . sex" might be outside Title VII's reach, the Supreme Court thus repudiated the notion that the scope of the statute is limited. In *Oncale*, the Court adopted perhaps the simplest test for whether discrimination had occurred: whether the conduct at issue met Title VII's "statutory requirements," i.e., whether the harassment occurred because of the employee's sex. *Id.* at 80.

The same test should apply to discrimination against gay and lesbian employees. Employers who take sexual orientation into account necessarily take sex into account, because sexual orientation turns on one's sex in relation to the sex of people to whom one is attracted. *See, e.g., Isaacs*, 143 F. Supp. 3d at 1193-94. There is no principled reason to create an exception from Title VII for sex discrimination that involves sexual orientation and no need to amend the statute to cover this type of discrimination.

4.      *The EEOC's Interpretation of Title VII is Entitled to Deference*

Mr. Bostock also respectfully submits that the Magistrate Judge failed to give proper deference to the position of the Equal Employment Opportunity Commission ("EEOC") in *Baldwin v. Foxx*, Appeal No. 0120133080, 2015 WL

4397641, at *5 (EEOC July 15, 2015) that sexual orientation discrimination is necessarily sex discrimination.  As the Magistrate Judge correctly noted, while the EEOC's interpretation of Title VII is not binding on this Court, it is entitled to respect to the extent that it is persuasive.  *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  The weight of deference afforded to agency interpretations under *Skidmore* depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."  *Id.* at 140.  Here, the Magistrate Judge made "no judgment about the thoroughness evident in Foxx's consideration or the validity of its reasoning, but note[d] its inconsistency with the EEOC's earlier pronouncement."  [Doc. 16 at 12.][3]  Mr. Bostock respectfully contends that the Magistrate Judge erred in failing to consider the thoroughness and validity of *Baldwin*.

   In *Baldwin*, the EEOC concluded that "sexual orientation is inherently a 'sex-based consideration,' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII.").

---

[3] The Magistrate Judge also stated that "Title VII is a creation of Congress and, if Congress is so inclined, it can amend the statute to provide a claim for sexual orientation discrimination. It is not the province of unelected jurists to effect such an amendment."  [Doc. 16 at 13.]  For the reasons stated in Part B.3., Mr. Bostock contends that no amendment of Title VII is necessary to provide for protection against sexual orientation discrimination.

"Sexual orientation discrimination is sex discrimination because it necessarily entails treating an employee less favorably because of the employee's sex." *Id.* This is because "'[s]exual orientation' as a concept cannot be defined or understood without reference to sex." *Id.*

As the EEOC correctly noted:

> When an employee raises a claim of sexual orientation discrimination as sex discrimination under Title VII, the question is not whether sexual orientation is explicitly listed in Title VII as a prohibited basis for employment actions. It is not. Rather, the question for purposes of Title VII coverage of a sexual orientation claim is the same as any other Title VII case involving allegations of sex discrimination -- whether the agency has "relied on sex-based considerations" or "take[n] gender into account" when taking the challenged employment action.

2015 WL 4397641, at *4 (July 15, 2015).   "[S]exual orientation is inseparable from and inescapably linked to sex and, therefore … allegations of sexual orientation discrimination involve sex-based considerations." *Id.* at *5.  This interpretation is fully consistent with the Supreme Court's holding in *Oncale*.

*Baldwin* is also especially persuasive because the EEOC relied upon Eleventh Circuit precedent as part of its analysis.  Specifically, the EEOC noted that "Title VII ... prohibits employers from treating an employee or applicant differently than other employees or applicants based on the fact that such

12

individuals are in a same-sex marriage or because the employee has [or is interested in having] a personal association with someone of a particular sex. Adverse action on that basis is, 'by definition,' discrimination because of the employee or applicant's sex." *Id.* at *7.  In support, the EEOC cited to the Eleventh Circuit's holding in *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race [in violation of Title VII].").  The EEOC noted that an "employment action based on an employee's relationship with a person of another race necessarily involves considerations of the employee's race, and thus constitutes discrimination because of the employee's race" and that "[t]his analysis is not limited to the context of race discrimination" since "Title VII 'on its face treats each of the enumerated categories' -- race, color, religion, sex, and national origin –'exactly the same." *Id. at *6-7 (*citing *Price Waterhouse,* 490 U.S. at 243 n.9; *See also Isaacs* 143 F. Supp.3d at 1193 ("Particularly compelling is [*Baldwin's*] reliance on Eleventh Circuit precedent.")

In *Isaacs,* the District Court for the Middle District of Alabama held that claims of sexual orientation-based discrimination are cognizable under Title VII. The court endorsed the EEOC's view that claims of sexual orientation-based

discrimination are cognizable under Title VII.  143 F. Supp.3d. at 1193.  The

cogent analysis and careful attention to EEOC and Eleventh Circuit authority in

*Isaac* is the only analysis that makes sense.[4]  It is the only result that is consistent

with both Supreme Court and EEOC precedent is that sexual orientation claims are

covered under Title VII.

    C.    <u>The Magistrate Judge Erred in Determining that Mr. Bostock Has Not
Stated a Claim For Gender Stereotype Discrimination</u>

       Mr. Bostock contends that the Magistrate Judge erred in dismissing his

complaint for gender stereotype discrimination.  The Magistrate Judge correctly

acknowledged that Mr. Bostock was not required to allege facts establishing each

element of a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), to survive a motion to dismiss, *see Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 508 (2002), but determined that the Second Amended Complaint

"contains no allegations that plaintiff suffered discrimination based on his

employer's belief that he failed to conform to masculine stereotypes."   [Doc 16 at

16.]

---

[4] In *Winstead*, the court declined to follow *Baldwin* on the issue of whether sexual
orientation discrimination is discrimination "because of sex" under Title VII
(although it held plaintiff's claim for gender stereotype discrimination was
actionable). Given *Baldwin's* persuasive value, however, Mr. Bostock submits that
*Isaacs* reached the correct result and that *Winstead* erred in declining to follow
*Baldwin* on this specific point.

The purpose of Rule 8(a)(2)'s pleading requirements is to ensure that defendants receive fair notice of what the claim is and on what grounds it is made. *See Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260-1261 (11th Cir. 2015).  In this case, Mr. Bostock's Second Amended Complaint meets this standard.  Mr. Bostock's allegations, which must be taken as true, include:  in the months after Mr. Bostock joined the softball league, his participation in the league and his sexual orientation and identity were openly criticized by one or more persons who had significant influence on the decision-making of Defendant.  (Sec. Am. Compl. ¶17).  Similarly, Mr. Bostock alleged that during a meeting with the Friends of Clayton County CASA Advisory Board, at least one individual made disparaging comments about Mr. Bostock's sexual orientation and identity.  (*Id.* ¶ 21).  Mr. Bostock has further alleged that the internal audit and the stated reason for his termination were simply a pretext for discrimination based on his sex and/or sexual orientation.  (*Id.* ¶ 23).  Thus, Mr. Bostock has sufficiently pleaded a claim for gender stereotype discrimination.

D.    The Magistrate Judge Erred in Determining that Mr. Bostock Failed to Exhaust His Administrative Remedies With Respect To His Gender Stereotyping Claim

The Magistrate Judge determined that Mr. Bostock failed to exhaust his administrative remedies with respect to his gender stereotyping claim and that

"[o]ne would not reasonably expect an EEOC investigation of gender stereotyping to grow out of the charge's allegation of sexual orientation discrimination."  Mr. Bostock respectfully submits that the Magistrate Judge erred in this determination.

As an initial matter, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970).  Thus, "'the scope of an EEOC complaint should not be strictly interpreted' " *Id.* at 465 (citation omitted).

In this case, Mr. Bostock's EEOC charge, which was filed *pro se*, "checked" the *only* box he could applicable to *both* sexual orientation and gender stereotyping discrimination:  Sex.  (Redacted copy attached as Ex. A.)  Moreover, Mr. Bostock stated in the charge that he believed he had been discriminated against on the basis of his sex.  (*Id.*)  Thus, he exhausted this claim at the EEOC level.  *See Rhea v. Dollar Tree Stores, Inc.*, No. 04-2554MIV, 2004 WL 3313616, at *3 (W.D. Tenn. August 26, 2004) (holding in part that where plaintiff amended a complaint alleging sexual orientation discrimination to add gender stereotyping claims that that the administrative remedies for the amendment were properly exhausted by an EEOC charge that checked the box marked "sex").

The Magistrate Judge relied on two inapposite cases, *Norris v. Diakin Drivetrain Components*, 46 F. App'x 344, 346 (6th Cir. 2002) and *Lankford v.*

16

*BorgWarner Diversified Transmission Prods., Inc.*, No. 1:02CV1876-SEB-VSS, 2004 WL 540983, at *3 (S.D. Ind. Mar. 12, 2004) in support of his erroneous determination that "[o]ne would not reasonably expect an EEOC investigation of gender stereotyping to grow out of the charge's allegation of sexual orientation discrimination." [Doc. 16 at 20.]  Neither of these cases dealt with gender stereotyping claims.  *See Norris*, 46 Fed App'x 344 (holding that a charge alleging discrimination based on sexual orientation did not give district court subject matter jurisdiction over claim of same-sex sexual harassment); *Lankford*, 2004 WL 540983, at *3 (noting that the amended complaint asserted harassment and discrimination on the basis of sex while the EEOC charge described harassment and discrimination on the basis of sexual orientation).  These cases therefore do not support the Magistrate Judge's erroneous conclusion that sex discrimination in the form of gender stereotyping was not properly exhausted by Mr. Bostock's EEOC charge.  Moreover,  because the issue of gender stereotyping is analytically indistinct  from the issue of sexual orientation discrimination, *Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1159 (C.D. Cal. 2015) ("claims of discrimination based on sexual orientation are covered by Title VII and IX, but not as a category of independent claims separate from sex and gender stereotype. Rather, claims of sexual orientation discrimination are gender stereotype or sex

discrimination claims"), his allegations of gender stereotyping are necessarily

"'like or related to, or grew out of' the allegations in the EEOC charge." *Green v.*

*Elixir Indus., Inc.*, 407 F.3d 1163, 1168 (11th Cir. 2005).  The simple fact is that

there is no box denoting the "gender stereotyping" theory of sex discrimination on

the EEOC's form charge. Mr. Bostock properly exhausted his administrative

remedies for any and all theories of sex discrimination by checking the box marked

"sex" for the type of discrimination of which he complained.

E.    <u>Mr. Bostock's Gender Stereotyping Claim is Timely</u>

Based on his other recommendations, the Magistrate Judge did not address

Defendant's alternative argument that Mr. Bostock's gender stereotyping claim is

untimely.  [Doc. 16 at p. 19, n.7.]  Should the Court agree with Mr. Bostock's

objections to the Report and Recommendation, Mr. Bostock contends that this

claim is timely because the claim relates back to  the same conduct alleged in his

Complaint and First Amended Complaint.  Rule 15(c) provides that "[a]n

amendment of a pleading relates back to the date of the original pleading when ...

the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original

pleading."  Fed. R. Civ. P. 15(c)(2).

In this case, Mr. Bostock's allegations concerning gender stereotype discrimination arise from the same conduct and occurrences set forth in his original pleading.  Specifically, the allegations relate to his sexual orientation and identity being openly questioned and disparagingly commented upon by individuals who had significant influence on the decision making of Defendant, which led to the discriminatory termination of Mr. Bostock.  Since the claim arises out of the same conduct as already set forth in the original complaint, it clearly relates back for purposes of the statute of limitations.  *See Rhea,* 2004 WL 3313616  at *3 (holding in part that where plaintiff originally brought a sexual orientation discrimination claim and sought to amend to add claims of sexual stereotyping that "[t]o the extent a claim for sex-stereotyping arises out of the same conduct alleged in the original complaint, any amendment would relate back.").

## IV.   CONCLUSION

There may not be a definitive recent ruling by the United States Supreme Court that Title VII prohibits sexual orientation discrimination, but the law is clear that it does.  For all the reasons set forth above and in Mr. Bostock's Response in Opposition to Defendant's Motion to Dismiss [Doc. 14], Mr. Bostock requests that the Court reject the Magistrate Judge's Report and Recommendation and deny Defendant's Motion to Dismiss.

Respectfully submitted,

BUCKLEY BEAL LLP

By:    s/ Thomas J. Mew IV
       Brian J. Sutherland
       bsutherland@buckleybeal.com
       Georgia Bar No. 105408
       Thomas J. Mew IV
       tmew@buckleybeal.com
       Georgia Bar No. 503447
       T. Brian Green
       bgreen@buckleybeal.com
       Georgia Bar No. 801098

Promenade, Suite 900
1230 Peachtree Street, NE
Atlanta, GA  30309
Telephone:  (404) 781-1100
Facsimile:  (404) 781-1101

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GERALD LYNN BOSTOCK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. 1:16-CV-1460 |
| v. | ) | |
| | ) | |
| CLAYTON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing has been prepared in Times New Roman 14 font, as approved by the Court in LR 5.1B.

s/ Thomas J. Mew
Georgia Bar No. 503447

BUCKLEY BEAL, LLP
1230 Peachtree Street NE, Suite 900
Atlanta, GA 30309
Phone: (404) 781-1100
Facsimile: (404) 781-1101

21

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GERALD LYNN BOSTOCK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. 1:16-CV-01460-ODE-WEJ |
| v. | ) | |
| | ) | |
| CLAYTON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2016, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will

automatically send email notification of such filing to counsel for Defendant:

    Jack Hancock, Esq.
    Martin B. Heller, Esq.
    William H. Buechner, Esq.
    FREEMAN MATHIS & GARY, LLP
    100 Galleria Parkway, Suite 1600
    Atlanta, Georgia 30339

                    s/ Thomas J. Mew IV
                    Georgia Bar No. 503447