# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **GERALD LYNN BOSTOCK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) NO: 1:16-cv-01460-ELR-WEJ |
| **CLAYTON COUNTY,** | ) |
| | ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Jack R. Hancock**
Georgia Bar No. 322450
**William H. Buechner, Jr.**
Georgia Bar No. 086392
**Michael M. Hill**
Georgia Bar No. 770486
**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
T: 770.818.0000
F: 770.937.9960

**Counsel for Defendant**

COMES NOW Clayton County (the "County"), the Defendant herein, and files this Reply Brief in Support of its Motion for Summary Judgment.

## I.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiff Fails To Demonstrate That He Should Survive Summary Judgment On His Single-Motive Sexual Orientation Discrimination Claim

Plaintiff fails to establish a *prima facie* case or a triable issue of pretext under the McDonnell Douglas framework. Recognizing this, Plaintiff argues in the alternative that he has presented "direct evidence" of sexual orientation discrimination and a "convincing mosaic" of discriminatory intent sufficient to survive summary judgment. These contentions are meritless for the reasons discussed below.

#### 1.    Plaintiff Fails To Demonstrate That He Should Escape Summary Judgment Under The *McDonnell-Douglas* Framework

##### a.    Plaintiff Fails To Establish A *Prima Facie* Case

Plaintiff argues he was replaced by someone outside his protected class because Judge Teske replaced Plaintiff with a female, Carol Gossett. (Doc. 157, p. 6). However, Plaintiff has asserted a claim for sexual orientation discrimination, which is a specific type of sex discrimination. See generally Bostock v. Clayton Cnty., 140 S. Ct. 1731 (2020). Under Plaintiff's analysis, which focuses on the biological sex of the comparator, a gay male who was replaced by (or treated less favorably than) a straight male could not establish a *prima facie* case of sexual orientation discrimination because he and any such comparators are of the same sex. This is nonsense.

Plaintiff also fails to identify any similarly-situated straight employees who were treated more favorably. His contentions regarding comparators are in reality just a re-hash of his pretext and "convincing mosaic" arguments (Doc. 157, pp. 6-9) rather than an attempt to identify a comparator. He regurgitates some of the findings in the other audits, but he does not present any evidence countering Mr. Slay's declaration explaining why the Juvenile Court administration found those audit findings to be erroneous and warranted no disciplinary action. (Doc. 158, pp. 59-62; Slay Decl. (Doc. 136-2), ¶¶ 6-8, 13-21).

    **b.**    **Plaintiff Fails To Create A Triable Issue Of Pretext**

        **i.**    **Plaintiff Fails To Show Judge Teske's Conclusion That Plaintiff's Misused GAL Funds Was Pretextual**

Not surprisingly, Plaintiff attempts to explain away his rampant misuse of GAL funds by claiming the MOU did not limit GAL funds to the recruitment, training, and retention of Clayton County CASA volunteers who served as *guardians ad litem* in Clayton County cases ("Clayton County CASA GAL volunteers"), and that the MOU authorized him to use the GAL funds for fundraising and marketing purposes, including to recruit volunteers for fundraising events and other purposes. (Doc. 157, pp. 15-16; 158, ¶ 24). His contentions, however, do not create a triable issue of pretext for the reasons stated in the County's opening brief. (See Doc. 36-9, pp. 12-13; see also Def.'s Resp. to Plaintiff's Statement of Additional Material Facts, ("Def.'s Resp. to PSAMF"), ¶ 15).

Although Plaintiff contends taking potential "recruits" to lunch or dinner using

GAL funds "worked" (Doc. 158, ¶ 24), he admitted immediately after the testimony he selectively cites that these expenditures had <u>not</u> resulted in any successful recruitment of Clayton County CASA GAL volunteers. (SMF, ¶ 24). Plaintiff also argues that an individual he spoke to at the Birmingham reception (funded by his sponsorship of his softball team) agreed to apply to become a Clayton County CASA GAL volunteer, but then decided not to apply after Plaintiff's termination. (Doc. 159, ¶ 72). However, these contentions are based on inadmissible hearsay and also irrelevant because Plaintiff did not inform Judge Teske of this purported "recruit" prior to his termination. (Def.'s Resp. to PSAMF ¶ 72).[1] Simply put, Plaintiff's failure to identify any Clayton County CASA GAL volunteers he successfully recruited after spending thousands of dollars in GAL funds in Atlanta on meals, alcoholic beverages and sponsoring his Atlanta-based softball team is fatal to Plaintiff's assertions of pretext.

Plaintiff points out Mr. Slay and Mr. Johnson had been reviewing bank statements for the GAL account he gave them. (Doc. 157, p. 16). However, Plaintiff failed to provide bank statements for a number of months, Mr. Slay admitted he did not know what he was

---

[1] Plaintiff also claims it was his "hope" that the two volunteers for a Georgia CASA fundraising event he identified would become Clayton County CASA GAL volunteers. (Doc. 158, p. 47, ¶ 63). Plaintiff, however, did not communicate any such "hope" to Judge Teske in his responses to Judge Teske's written questions. (Teske Dep., Ex. 81, ¶ 10). Moreover, Plaintiff's "hope" was that these two individuals would become CASA Guardians (another FCCC program), <u>not</u> Clayton County CASA GAL volunteers. (Bostock Dep., pp. 96:20-97:4-19; 206:6-10).

looking for, Mr. Johnson had concerns about what he saw in the bank statements, and both believed a more thorough review by professionals was warranted. (SMF, ¶¶ 28, 36; Def.'s Resp. to PSAMF, ¶¶ 22, 25, 27-28). Moreover, Judge Teske did not review these bank statements. (Def.'s Resp. to PSAMF, ¶ 24).

Plaintiff also contends the audit was tainted with discriminatory animus. (Doc. 157, pp. 7, 16-19). He relies primarily on several pages of bullet points consisting of irrelevant, unsupported and/or meritless assertions.[2] The evidence is undisputed that (1) Ms. Merritt learned of the GAL account by asking Mr. Johnson about outside accounts maintained by Juvenile Court employees (SMF, ¶¶ 31-32; Merritt Dep., Ex. 92); (2) she decided to speak to Plaintiff about the account and recommended a full audit after her initial conversation with him raised "red flags" (SMF, ¶ 33); (3) Chairman Turner approved the audit based on Ms. Merritt's recommendation (Def.'s Resp. to PSAMF, ¶ 30);[3] and (4) Judge Teske also approved the audit based on Ms. Merritt's recommendation and other factors unrelated to Plaintiff's sexual orientation. (SMF, ¶¶ 30, 34, 36).[4]

---

[2] See Def.'s Resp. to PSAMF, ¶¶ 30, 32-37, 40, 46, 48, 50, 57-60. In particular, Mr. Johnson did not say to Ms. Moore, "Mr. Bostock is gay," as Plaintiff suggests. Instead, Mr. Johnson mentioned that Plaintiff previously had escaped disciplinary action after being caught with nude photographs of men on his County-issued computer. (Id., ¶ 35).

[3] Plaintiff's claim that Chairman Turner told an FCCC Board member he was uncomfortable being around Plaintiff because he is gay (Doc. 158, ¶ 15) is inadmissible hearsay and otherwise irrelevant.

[4] The diary entries Plaintiff cites (Doc. 157, p. 10) did not lead to the audit, but rather were based on the findings of the audit.

Finally, Plaintiff contends the County did not have the authority to conduct the audit because the Juvenile Court did not have "direct oversight authority" over the GAL account. (Doc. 157, p. 8). This is utter nonsense. As a party to the MOU, the Juvenile Court was more than entitled to monitor and enforce compliance with its terms and take disciplinary action against an employee who breached its terms. Moreover, the statements Plaintiff cites simply reflect that the Juvenile Court did not own the bank account into which the GAL funds were deposited and could not walk into the FCCC Chair's office and demand the bank statements. (Def.'s Resp. to PSAMF, ¶¶ 30, 33).

### ii. Plaintiff's Contention He Did Not Spend GAL Funds Improperly Does Not Create A Triable Issue Of Pretext

In his response, Plaintiff fails to present any evidence showing that Judge Teske did not honestly believe that at least some of the expenditures of GAL funds were not business-related but rather were for personal pursuits based on a number of factors. (SMF, ¶¶ 24, 41, 46-47, 50, 61, 68-69). Contrary to Plaintiff's assertions, the reference in Judge Teske's diary to Plaintiff using GAL funds for meals with former boyfriends (Doc. 157, at p. 11 & n.1) was not something he would have written in his diary without receiving information creating this suspicion, and this suspicion proved to be well-founded in at least one instance. (Def.'s Resp. to PSAMF, ¶ 46, SMF, ¶ 61).

Plaintiff also contends that Judge Teske was not concerned about any personal benefit arising out of his use of GAL funds to sponsor his softball team, and that Judge

Teske's real concern with this sponsorship was that it was a "public expression of Plaintiff's identity as a gay man." (Doc. 158, p. 52). However, Plaintiff had been publicly expressing his identity as gay man for the previous 10 years. (SMF, ¶¶ 6, 11-12, 14). Plaintiff fails to explain how or why his public expressions of his identity as a gay male suddenly became problematic to Judge Teske after 10 years. (Id.).

### iii. Neither Judge Teske's Statements In His Diary Nor His Deposition Testimony Create A Triable Issue Of Pretext

Plaintiff's empty rhetoric notwithstanding (Doc. 157, pp. 9-10), nothing in Judge Teske's diary or deposition testimony suggests his conclusion that Plaintiff misused GAL funds for purposes unauthorized by the MOU was tainted by discriminatory animus. Indeed, Judge Teske specifically stated in his diary that the GAL funds were "dedicated to the recruitment of Clayton County CASA volunteers, their training and retention." (Def.'s Resp. to PSAMF, ¶¶ 44-45).

Contrary to Plaintiff's assertions (Doc. 157, pp. 9-10), Judge Teske did not "admit" Plaintiff's sexual orientation was a "contributing factor" in the termination decision, but rather emphasized that his concern was not that Plaintiff is gay. (SMF, ¶ 73; Def.'s Resp. to PSAMF, ¶¶ 62). Instead, Judge Teske testified that Plaintiff's sexual orientation was one of several factors that led him to reasonably and honestly suspect Plaintiff had spent GAL funds on personal interests, which was one of the two reasons Judge Teske gave for Plaintiff's termination. (SMF, ¶¶ 65, 69; Def.'s Resp. to PSAMF, ¶¶ 62). Thus, the record

-6-

is devoid of any support for Plaintiff's contention that "if Mr. Bostock were not gay, Teske would not have fired him." (Doc. 157, p. 10).

The County cited case law in its opening brief holding that *recognizing* a plaintiff's protected characteristic does not constitute evidence of a discriminatory motive where the plaintiff failed to show that the recognition was for an improper purpose. (Doc 136-9, at pp. 20-21). Plaintiff fails to address this authority at all. Plaintiff merely argues that, if he "were Japanese and took a potential volunteer to a Japanese restaurant, he would be 'reasonably' subject to 'suspicion.'" (Doc. 157, p. 13). But a Japanese restaurant is known for its cuisine, not for the clientele to whom it predominantly caters. Plaintiff's inapt analogy also fails to account for his failure to recruit a single Clayton County CASA GAL volunteer after more than two years of wining and dining in Atlanta or the fact that he was "recruiting" such volunteers far away from Clayton County. Nor has Plaintiff presented any evidence that a straight male employee who was suspected of spending GAL funds on female friends would not have been terminated.

Plaintiff's remaining contentions regarding Judge Teske's diary and deposition testimony – most of which are presented as bullet points – are meritless and fail to create a triable issue of pretext or show that Judge Teske (who has a long track record of support for the gay community) had a discriminatory animus against Plaintiff because he is gay. (Def.'s Resp. to PSAMF, ¶¶ 44-46, 50-55, 62, 64-65; SMF, ¶¶ 5,14).

### iv. The Remaining Alleged Statements Cited By Plaintiff Do Not Create A Triable Issue Of Pretext

Contrary to Plaintiff's contentions, Judge Teske's alleged "But it was at a gay bar" comment to Ms. Crawford does not create a triable issue of pretext. (Def.'s Resp. to PSAMF, ¶ 68). The record is undisputed that Judge Teske reviewed the findings of the audit with Ms. Crawford, including Plaintiff's use of GAL funds at Midtown Atlanta establishments, that Plaintiff "was using the GAL funds to pay for things that he should not have been using the GAL funds for," and that Plaintiff mishandled or misused funds in the GAL account. (Id., ¶ 64). The alleged statement by Judge Teske accurately stated what the auditors discovered (SMF, ¶¶ 42, 50, 61) and does not suggest that his concern was that the expenses were for a "gay" bar rather than the fact the bar was in Atlanta and that the expenses may have been for personal rather than business reasons.

The fact that Judge Teske accurately recited the fact that Plaintiff improperly spent GAL funds to sponsor a "gay" softball team in Atlanta during the meeting with Juvenile Court staff at which he discussed Plaintiff's termination does not create a triable issue of pretext. (SMF, ¶¶ 42, 52-53; Def.'s Resp. to PSAMF, ¶ 69; Doc. 159, ¶ 26).[5] This statement does not suggest that Judge Teske's concern was that the expense was for a

---

[5] Judge Teske called this impromptu staff meeting because a local news station was going to run a story about Plaintiff's termination, and he did not want employees to find out about Plaintiff's termination for the first time on the evening news. (Def.'s Resp. to PSAMF, ¶ 70).

"gay" softball team rather than the fact that it was located in Atlanta. Even if Ms. Johnson does not remember Judge Teske providing additional examples of Plaintiff misusing GAL funds during this meeting, this does not create a triable issue of pretext.

Finally, Plaintiff's assertion that John Johnson made an "unsolicited out-of-the-blue" remark (Doc. 157, pp. 14-15) to Plaintiff during his termination meeting is absurd. Even under Plaintiff's version of events, Plaintiff said, "I know what this is about" after concluding that he was being terminated because he is gay, and Mr. Johnson responded, "This is not because you are gay." (Def.'s Resp. to PSAMF, ¶ 71). Thus, Mr. Johnson correctly recognized and denied Plaintiff's allegation, and Plaintiff's citation to Shakespeare (Doc. 157, p. 15 n.4) does not alter this reality.

### 2. Plaintiff Fails To Present "Direct Evidence" of Sexual Orientation Discrimination

Plaintiff blatantly mischaracterizes the record by saying Judge Teske "admitted" Plaintiff's sexual orientation was a contributing factor in the termination decision. (Doc. 157, p. 4.) Judge Teske testified his suspicion Plaintiff spent GAL funds on *personal interests* was a contributing factor in the termination decision. (Def.'s Resp. to PSAMF, ¶ 62.) Nothing in Judge Teske's testimony constitutes direct evidence of discrimination.

As discussed in the County's opposition to Plaintiff's motion (Doc. 154, pp. 4-7), the Eleventh Circuit repeatedly has held direct evidence does not include statements that require an additional inference to conclude that one acted with a discriminatory motive.

Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1242 n.11 (11th Cir. 2016). Judge Teske testified one of the reasons he terminated Plaintiff was that he was "highly suspicious that [Plaintiff's] up there [in midtown Atlanta] doing personal, more so than business stuff." (Def.'s Resp. to Pl.'s SAMF, ¶ 62.) When Plaintiff's counsel asked Judge Teske if, by "personal," he meant "gay stuff," Judge Teske said "it doesn't matter whether you're gay [or] you're straight." (Id.) Even in his personal diary he reiterated "[i]t's not the gay thing that upsets me." (Id., ¶ 50.) Thus, no reasonable jury could find Judge Teske's statements to be direct evidence of sexual-orientation discrimination, because the jury at least would have to make the additional inference that Judge Teske did not mean what he said when he expressly disclaimed having an anti-gay discriminatory motive. See Wilson v. B/E Aero, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (direct evidence requires proof of fact "without inference or presumption").[6]

### 3. Plaintiff Shows No "Convincing Mosaic" Of Discriminatory Intent

Plaintiff also argues he should escape summary judgment on his single motive claim under the theory that he has presented "a convincing mosaic of circumstantial

---

[6] Plaintiff's citations to EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990), and EEOC v. Beverage Canners, 897 F.2d 1067, 1068 & n.3, 1070 & n.6, 1071-72 (11th Cir. 1990), are unavailing because Judge Teske's testimony is nothing like the statements at issue in those cases. (See also Doc. 154, pp. 6-7.) Nowhere does Judge Teske say he did not want a gay man as Child Welfare Services Coordinator or that he wanted a straight person in that position; nor is there any evidence in the record of Judge Teske making any derogatory comments about gay individuals. (SMF, ¶ 15).

evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (footnote omitted); (see Doc. 157, pp. 5, 8-9, 20.)

However, the "convincing mosaic" theory "is not intended to undermine the usual requirement of an identified comparator." Woodward v. Jim Hudson Luxury Cars, Inc., 2019 WL 4793058, 2019 U.S. Dist. LEXIS 169564, at *23 (S.D. Ga. Sept. 30, 2019) (citation omitted). "The evidence presented under the 'convincing mosaic' must be sufficient enough to overcome the lack of comparator evidence." Id. (citing cases) (punctuation omitted); accord King v. Ferguson Enters., 971 F. Supp. 2d 1200, 1217 (N.D. Ga. 2013), aff'd, 568 F. App'x 686 (11th Cir. 2014).

Plaintiff's reliance on Smith is inapposite. The Eleventh Circuit has recognized that, in Smith, "the employee offered compelling evidence of his employer's motive to treat white employees less favorably, numerous incidents where the discipline of white employees varied considerably from that of black employees, and a 'discipline matrix' created by the employer that tracked the discipline and race of employees."[7] Connelly v. Metro. Atlanta RTA, 764 F.3d 1358, 1364 (11th Cir. 2014). No such evidence exists here, and unlike Smith and Hamilton v. Southland Christian Sch.., Inc., 680 F.3d 1316 (11th

---

[7] All seven of the white employees on the "discipline matrix" were terminated for distributing a racist email, whereas the only black employee on this matrix was not terminated. See Bumpus v. Middle Ga. Reg'l Comm'n, 2018 WL 4053325, 2018 U.S. Dist. LEXIS 144137, at *14 (M.D. Ga. Aug. 24, 2018) (distinguishing Smith).

Cir. 2012), abrogated in part on other grounds, United States v. Durham, 795 F.3d 1329, 1330-31 (11th Cir. 2015) (*en banc*), Plaintiff has failed to present a triable issue of pretext, as discussed in Section A.1(b) above and in the County's opening brief.

**B.     Plaintiff Fails To Present A Triable Issue On His Mixed-Motive Claim**

Plaintiff makes virtually no argument for why a mixed-motive claim should survive summary judgment. He addresses none of the County's arguments or authorities cited in its initial brief. Instead, he rehashes his direct evidence argument, refers to the previous twenty pages of his brief, and just *asserts* that "[a]t a minimum," his mixed-motive claim should survive. (Doc. 157, p. 21.)

As discussed in the County's initial brief and its opposition to Plaintiff's motion (Doc. 136-9, pp. 18-23; Doc. 154, pp. 19-25), the statements Plaintiff challenges from Judge Teske's testimony are fundamentally different from the statements held in Quigg to be evidence of a mixed motive. Unlike the decisionmakers in Quigg, who stated they wanted a male presence in the school superintendent's office, Judge Teske expressed no desire for the office of Child Welfare Services Coordinator to have a certain sexual orientation. Nor would that have made sense because Judge Teske replaced Plaintiff with Ms. Gossett, who, like Plaintiff, is gay. (SMF, ¶¶ 13, 74).

Plaintiff appears to argue that any reference or acknowledgment of one's protected characteristic in the context of an adverse employment action equates to evidence of discriminatory animus. That is not the law; nor does it comport with common sense, which

is why Plaintiff avoids discussing Lewis v. Metro. Atlanta RTA, 343 F. App'x 450 (11th Cir. 2009) and Lieu v. Board of Trs., No. 5:15-cv-02269-MHH, 2020 U.S. Dist. LEXIS 244752 (N.D. Ala. 2020), cited in the County's initial brief. (Doc. 136-9, pp. 20-21.) These cases make clear that an employer's acknowledgment of an employee's protected characteristic does not support a mixed-motive claim where the *context* shows a legitimate reason for comments referencing the characteristic.

All references to Plaintiff's sexual orientation arose in discussions of Plaintiff's expenditures from the GAL account. When one is confronted by the fact that a large percentage of these expenditures over the last two years of his employment went to midtown Atlanta bars and restaurants and, when asked, Plaintiff was not able to identify a single Clayton County CASA GAL Volunteer he recruited from these outings, an obvious inference is that Plaintiff may have been spending GAL funds on meals and alcohol for himself or his friends. That many of these midtown Atlanta establishments also happened to cater to a gay clientele is additional circumstantial evidence that, to any reasonable observer, is consistent with the inference that these may have been personal instead of business-related outings.

### C. Plaintiff Raises No Triable Issue On The County's Same-Decision Defense

Plaintiff argues the County cannot rely on the audit to support a same-decision defense because Judge Teske "mischaracterized" the audit and "relied upon his own discriminatory assumptions." (Doc. 157, p. 22.) Again, Plaintiff distorts Judge Teske's

testimony and misrepresents to this Court that Judge Teske made an "admission" of animus when his testimony, diary, and history of support for the gay community show the exact opposite. See supra Part I.A.1.b.iii.

Judge Teske did not rely on "assumptions" but gave Plaintiff a chance to explain his expenditures and how they related to the MOU's goals of recruiting, training, and retaining Clayton County CASA GAL Volunteers. (SMF ¶ 58.) Everyone who reviewed Plaintiff's responses to Judge Teske's questionnaire agreed they showed a pattern of repeated expenditures outside the MOU's scope. (Id., ¶ 70.) Plaintiff's claim that "an individual could volunteer for the CASA program in multiple ways beyond becoming a court appointed advocate" misses the point. (Doc. 157, p. 23.) The MOU is clear on the type of "volunteer" it contemplates and outlines at length the duties of only one type of volunteer: the court appointed special advocate. (SMF, ¶ 19.) Soliciting pledges, donations, or volunteers for FCCC events simply are not in the MOU.[8] (Id.) Nor does anything in the MOU suggest any departure from the County's long-standing and well-known prohibition on the purchase of alcohol with County funds.[9]

---

[8] This is not to diminish the value of such activities, but using GAL funds to raise money for the FCCC is, as Judge Teske explained, taking "from Peter to pay Paul." (SMF, ¶ 65).
[9] The Court should not countenance Plaintiff's *faux-naif* reading of the MOU that anything not expressly prohibited must be permissible. Plaintiff admitted in his deposition he was well aware the County did not permit its funds to be spent on alcohol. (Bostock Dep. at 89:2-6.) If purchasing alcohol was no problem, as Plaintiff now contends, then why does he allege Judge Teske gave him a special instruction to use the GAL debit card for alcohol

-14-

Judge Teske also did not make the termination decision in a vacuum but discussed it with Mr. Slay, Mr. Johnson, Renee Bright, and Judge Benefield;[10] and even the auditors believed he should have been terminated.[11] (Id., ¶¶ 57, 64, 70.) Plaintiff is wrong to suggest their agreement is irrelevant. While not decisionmakers, they all had contemporaneous information on how he spent GAL funds. So the fact that individuals who indisputably had no anti-gay animus (Bostock Dep. at 32:11-24) agreed with the decision contradicts Plaintiff's assertion that "if Mr. Bostock were not gay, Teske would not have fired him." (Doc. 157, p. 10.)

## II.   CONCLUSION

For the foregoing reasons, and those expressed in the County's initial brief, the County is entitled to judgment as a matter of law on all of Plaintiff's claims. This action thus should be dismissed with prejudice.

---

that patrons left unpaid at one CASA event? (See Bostock Dep. at 135:2-8.) The clear inference is such purchases were not permitted in the normal course.

[10] Contrary to Plaintiff's argument (Doc. 157, p. 24), Judge Teske's testimony that Judge Benefield agreed with his decision is not inadmissible hearsay because it shows her then-existing state of mind and Judge Teske's motive in making sure she agreed with terminating Plaintiff. Fed. R. Evid. 803(3). Plaintiff also misrepresents the facts in stating that Judge Benefield relied only on what Judge Teske told her because it is undisputed the auditors also gave her a hard copy of the audit report. (SMF, ¶ 55).

[11] Plaintiff shows no contradiction between Ms. Moore's agreement with the termination decision and her purported testimony that she was "surprised" by it. (Doc. 157, p. 24 n.6.) She actually testified she was "[s]ort of" surprised, which is no indication of disagreement. (Moore Dep. at 84:3-5.) Plaintiff's counsel could have asked Ms. Moore the reason for this "surprise," but he forewent the opportunity to do so. (Id. at 84:6-13.)

-15-

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Jack R. Hancock*
Jack R. Hancock
Georgia Bar No. 322450
William H. Buechner, Jr.
Georgia Bar No. 086392
Michael M. Hill
Georgia Bar No. 770486

*Counsel for Clayton County*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
Telephone: (770) 818-0000
Facsimile: (770) 937-9960
jhancock@fmglaw.com
bbuechner@fmglaw.com
mhill@fmglaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman type face.

This 25th day of May, 2022.

                                           */s/ Jack R. Hancock*
                                           Jack R. Hancock
                                           Georgia Bar No. 322450

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the within and foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following counsel of record:

>Thomas J. Mew, IV
>Edward D. Buckley
>Andrew Beal
>Buckley Beal LLP
>600 Peachtree Street, NE, Suite 3900
>Atlanta, GA 30308

This 25th day of May, 2022.

>*/s/ Jack R. Hancock*
>Jack R. Hancock
>Georgia Bar No. 322450